NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

25-P-854                                            Appeals Court

IN THE MATTER OF M.M.

No. 25-P-854.

Essex.     April 28, 2026. – July 13, 2026.

Present:  Meade, D'Angelo, & Tan, JJ.


Practice, Civil, Civil commitment.  Mental Health.  Health Care
    Facility.



    Petition filed in the Lynn Division of the District Court
Department on September 23, 2021.

    The case was heard by Asha White, J.


    Christine Hamilton Queiroz for M.M.
    Thomas F. Schiavoni for the petitioner.


    D'ANGELO, J.  M.M. was involuntarily committed to BayRidge

Hospital in October 2021 by an order of civil commitment issued

by a District Court judge, pursuant to G. L. c. 123, §§ 7 (a)

and 8.  The Appellate Division of the District Court Department

(Appellate Division) affirmed the order of commitment and M.M.

filed an appeal to this court.  On appeal, M.M. claims that the

person who signed the petition did not qualify as a person authorized to do so pursuant to G. L. c. 123, §§ 1 and 7 (a). We agree that the record evidence is insufficient to demonstrate that the person who signed the petition is a "superintendent" or "other head" of a facility, and we therefore reverse the decision and order of the Appellate Division.[1]

Background.  On September 23, 2021, BayRidge Hospital (petitioner) filed pleadings in the District Court, including a petition seeking commitment of M.M. (commitment petition), pursuant to G. L. c. 123, §§ 7 and 8; a petition for determination of incompetency and for authorization of medical treatment for mental illness (medication petition), pursuant to G. L. c. 123, § 8B; and a substituted judgment treatment plan. The two petitions identified the "facility" as "BayRidge Hospital" and the signatory as the "Medical Director" of that facility; the signatories, however, were two different people. The commitment petition was signed by Michael Tarmey, while the medication petition and substituted judgment treatment plan were signed by Dr. Canh Vu, listing Dr. Vu as "Medical Director." Additionally, although the commitment petition included a "title" block, in which Tarmey was identified as the medical

---

[1] In light of our decision, we need not reach M.M.'s argument that there was insufficient evidence to allow the order.

director, it also included a signature block in which Tarmey was identified as "Vice President, Associate Chief Nursing Officer."

A commitment hearing was held on October 6, 2021. After the hearing, the judge issued an order involuntarily committing M.M. to BayRidge Hospital for a period of up to six months. M.M. timely appealed from the commitment order to the Appellate Division, asserting that the District Court lacked subject matter jurisdiction to address the petition, an argument not raised before the hearing judge. Specifically, M.M. argued that the evidence at the hearing failed to demonstrate that Tarmey, the signatory of the commitment petition, had the statutory authority to sign the petition pursuant to G. L. c. 123, § 7 (a). The Appellate Division affirmed the District Court judge's commitment order. M.M. appealed from the decision and order of the Appellate Division to this court, raising essentially the same jurisdictional challenge he presented to the Appellate Division.[2]

Discussion. M.M. challenges his commitment by asserting that the District Court lacked subject matter jurisdiction to

_____

[2] Although the commitment order at issue expired in April 2022, this appeal is not moot. Pembroke Hosp. v. D.L., 482 Mass. 346, 351 (2019), quoting Matter of F.C., 479 Mass. 1029, 1029-1030 (2018) ("Wrongfully committed patients have a surviving interest in establishing, after discharge, that the orders by which they were committed were unlawful, 'thereby, to a limited extent, removing a stigma from [their] name and record'").

hear the commitment petition.  M.M. claims that the petitioner must present evidence that the person who signed the petition has decision-making authority over a qualified psychiatric facility and that the individual who signed the petition is a superintendent or "other head" of the facility.  In this case, M.M. claims that the petitioner presented no such evidence and therefore the petitioner lacked authority under the statute to petition the District Court.

We need not determine whether this claim raises a question of subject matter jurisdiction.[3]  The petitioner raised no argument that M.M. waived the issue, or that the issue is not properly before us, and given the lack of objection and the importance of the issue, we reach the merits of the claim without the need to decide whether it is jurisdictional. Assuming without deciding that this claim has not been waived by the respondent, we agree that the information before the judge

---

[3] In Acting Supt. of Bournewood Hosp. v. Baker, 431 Mass. 101, 103-105 (2000), the Supreme Judicial Court characterized a challenge to an element of G. L. c. 123, §§ 7 and 8, as jurisdictional.  However, the Supreme Judicial Court has since rejected efforts to characterize similar elemental challenges to statutes as jurisdictional in other situations.  See Zoning Bd. of Appeals of Milton v. HD/MW Randolph Ave., LLC, 490 Mass. 257, 262-263 (2022); Cambridge St. Realty, LLC v. Stewart, 481 Mass. 121, 127-130 (2018); Doe, Sex Offender Registry Bd. No. 3974 v. Sex Offender Registry Bd., 457 Mass. 53, 56-57 (2010).

did not permit a conclusion that the petition was filed pursuant to the requirements of G. L. c. 123, § 7.

The procedure governing petitions for involuntary civil commitment is established by statute. See G. L. c. 123, § 7 (a). Involuntary civil commitment is a powerful restraint on a "psychiatric patient['s] fundamental right to liberty." Pembroke Hosp. v. D.L., 482 Mass. 346, 352 (2019), quoting Williams v. Steward Health Care Sys., LLC, 480 Mass. 286, 292 (2018). We therefore interpret G. L. c. 123 strictly, "in light of the legislative intent to protect the patient's right to be 'free from physical restraint.'" Pembroke Hosp., supra, quoting Matter of E.C., 479 Mass. 113, 119 (2018). See Newton-Wellesley Hosp. v. Magrini, 451 Mass. 777, 784 (2008) (interpreting c. 123 in manner "consistent with the intent of the Legislature to extend further procedural protections to persons who, by virtue of their temporary involuntary commitment, are experiencing a massive curtailment of their liberty" [quotation and citation omitted]).

Under this statute, "[t]he superintendent of a facility" may petition the District Court for commitment of "any patient at said facility" whom the superintendent determines that "the failure to hospitalize would create a likelihood of serious harm by reason of mental illness." G. L. c. 123, § 7 (a). As relevant here, "[s]uperintendent" is defined as "the

superintendent or other head of a public or private facility," and a "facility" is defined as "a public or private facility for the care and treatment of mentally ill persons."  G. L. c. 123, § 1.[4]

The Department of Mental Health (department) has promulgated regulations defining "[f]acility" as

> "[a] Department-operated hospital, community mental health center with inpatient unit, or psychiatric unit within a public health hospital; a Department-licensed psychiatric hospital; a Department-licensed psychiatric unit within a general hospital; or an intensive residential treatment program for adolescents that is either designated as a facility under the control of the Department or licensed by the Department."

104 Code Mass. Regs. § 25.02 (2016).  The regulations also define a "[f]acility director" or "[d]irector of a [f]acility" as "[t]he superintendent, chief operating officer, or other head of a facility, who may petition the district . . . court for commitment pursuant to [G. L. c. 123], and who may take such other action as is authorized or required of the superintendent pursuant to [G. L. c. 123]."  104 Code Mass. Regs. § 25.02.

A judge reviewing a petition under G. L. c. 123, § 7 (a), may rely on the information in the petition and the signatory's

---

[4] The statute further instructs the Department of Mental Health to "adopt regulations consistent with [G. L. c. 123] which establish procedures and the highest practicable professional standards for the reception, examination, treatment, restraint, transfer and discharge of mentally ill persons in departmental facilities" (emphasis added).  G. L. c. 123, § 2.

title, absent any challenge to the validity of that information or apparent inconsistencies in the petition or other filings, in determining whether the person who signed the petition is authorized to do so.  In the District Court proceedings pursuant to G. L. c. 123, § 7 (a), the signature on a petition of an individual identified as the "superintendent" or "other head" of the facility -- e.g., the hospital or psychiatric unit -- to which commitment is sought is sufficient to demonstrate the signatory's authority under G. L. c. 123, § 7.  Cf. Hiles v. Episcopal Diocese of Mass., 437 Mass. 505, 516 n.13 (2002) (complaint's allegations of facts establishing jurisdiction taken as true in response to facial attack).  Similarly, the signature of an individual represented to be the "designee" of an absent superintendent or other head of the facility is sufficient to demonstrate the requisite authority of the signatory.

Here, the judge reviewing the petition was presented with conflicting information concerning the signatory's title.  It follows that the petition, on its face, raises the question whether the petitioner is a "superintendent" or "other head" of a facility, or the designee of such a person with the authority to file the petition.  Given this ambiguity in the commitment petition, the judge must resolve this factual challenge while giving no presumptive weight to the petition.  Cf. Callahan v.

First Congregational Church of Haverhill, 441 Mass. 699, 711 (2004), citing Hiles, 437 Mass. at 516.

The commitment petition listed Tarmey's title in two places on the one-page petition, each bearing contradictory titles: "Medical Director" at the top of the petition, and "Vice President, Associate Chief Nursing Officer" in the signature line.  Moreover, the medication petition and substituted judgment affidavit identified Dr. Vu as "Medical Director." Assuming, without deciding, that a "medical director" may qualify as an "other head" of a facility consistent with the requirements of the statute, all the documents identified the facility as BayRidge Hospital, and nothing suggested that Tarmey and Dr. Vu shared the medical director role.  Recognizing the legislative intent behind c. 123, see Pembroke Hosp., 482 Mass. at 352, and that the department's regulations must be "consistent with" the language in G. L. c. 123, § 2, we conclude that the petitioner failed to demonstrate that Tarmey qualified as a "superintendent," an "other head" of the facility, or a designee of such a person, authorized to file a petition pursuant to G. L. c. 123, §§ 1 and 7 (a).

We note that a respondent in a civil commitment proceeding remains free to challenge the authority of a petition's signatory even if information in the petition appears sufficient on its face.  For instance, the respondent may do so by

presenting affirmative evidence challenging the signatory's authority or by raising the issue through cross-examination of the petitioner's witnesses.  In such circumstances, the judge should resolve the issue based on the evidence presented.

The decision and order of the Appellate Division is reversed, and a new order shall enter vacating the order of civil commitment pursuant to G. L. c. 123, §§ 7 and 8.

So ordered.